UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cr-00294-DJC |
| Plaintiff, | |
| v. | **ORDER** |
| LYLE JIM, | |
| Defendant. | |

On September 7, 2024, California Highway Patrol officers pulled over Lyle Jim, charged him with driving under the influence, and searched his vehicle. The officers found a pistol with its serial number etched off in the vehicle's center console, and some marijuana. Jim moves to have the discovery of the gun and marijuana suppressed. For the reasons discussed below, the Court DENIES Jim's Motion.

**LEGAL STANDARD**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. If a search is found to be illegitimate, a criminal defendant may invoke the exclusionary rule to suppress evidence obtained in violation of the Fourth Amendment. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 341 (1974); Fed. R.

1

1  Crim. P. 41(h).  The exclusionary rule covers not just evidence obtained as a direct
2  result of the illegal search or seizure, but also evidence derived from that illegality,
3  which is considered fruit of the poisonous tree.  *United States v. Ngumezi*, 980 F.3d
4  1285, 1290 (9th Cir. 2020).

**FACTS**

In the early hours of September 7, 2024, a California Highway Patrol ("CHP") officer pulled over Lyle Jim after allegedly observing him driving in excess of the posted speed limit and driving between the marked lanes of the road.  (ECF No. 39, Motion to Suppress, hereinafter "Mot." at 3; ECF No. 45, Opposition, at 1–2.)  Jim pulled into a nearby gas station parking lot, and the CHP officer asked him for his driver's license, registration, and insurance.  (Mot. at 3; Opp'n at 2.)  The CHP Officer alleges that Jim had trouble locating his license which was in his wallet, and that she needed to indicate to him where it was.  (Opp'n at 2.)  She further alleges that Jim's eyes appeared red and watery.  (*Id.*)  She asked him if he had consumed any alcoholic beverages, which he denied doing.  (*Id.*)  She then conducted a cursory check of Jim's eyes and alleges that she observed a lack of smooth pursuit and that his head continuously moved, both common indicators of intoxication.  (*Id.*)  She requested he leave the vehicle and complete a driving under the influence ("DUI") field sobriety test.  (*Id.*)  At this time, two additional CHP officers arrived at the scene.  (*Id.*)

Upon leaving the vehicle, the officers allege that Jim struggled to maintain his balance, had red and watery eyes, an unsteady gait, slurred speech, and the odor of an alcoholic beverage emitting from his breath and person.  (*Id.*)  The officers allege that they again asked Jim if he had consumed any alcohol, which he again denied doing.  (*Id.*)  Jim failed the subsequent field sobriety test.[1]  (*Id.*)

Based on the officers' observations of Jim's driving and his behavior after exciting the vehicle, Jim's alleged symptoms of alcoholic impairment, and his failure of

---

[1] The CHP officers conducted the following four field sobriety tests: Horizontal Gaze Nystagmus, Walk and Turn, One Leg Stand, and Modified Romberg Balance.  (Opp'n at 2, n.1)

the field sobriety test, the officers arrested Jim for a violation of California Vehicle Code section 23152(a). (*Id.* at 3.) The officers allege that Jim's preliminary breath alcohol screening test recorded a blood alcohol level of .15%, nearly double the legal limit, although it is unclear from the pleadings when the officers administered this screening. (*See id.*;) *see also* Cal. Veh. Code § 23152(b). The officers informed Jim that he would be able to be picked up from the police station by a family member. (Mot. at 3.) During this time, the officers became informed that Jim was the subject of a "watch alert" and a documented gang member. (*Id.* at 3-4.) The officers then placed Jim in a patrol vehicle and began to take inventory of Jim's vehicle before it was towed. (*Id.* at 4; Opp'n at 3.) Upon an initial search of Jim's vehicle, the officers found in the center console a Rock Island Armory, M1911-A1 FS .45 Caliber with the serial number etched off, and some marijuana. (Mot. at 4; Opp'n at 3.)

## DISCUSSION

Jim argues that the officer's warrantless search of his vehicle was an improper investigatory search that violated his Fourth Amendment protections and that any evidence obtained from the search must be suppressed. The Government argues that the search was properly conducted due to the need to inventory the vehicle's contents subsequent to an arrest for a DUI and seizure of the vehicle. The Government also argues that any search was proper under the automobile exception permitting searches subsequent to an arrest. The Court finds that the evidence was properly obtained via an inventory search and therefore does not consider the automobile exception.

### A. The Evidence is Admissible as the Result of a Valid Inventory Search

"[P]olice may, without a warrant, impound and search a motor vehicle so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016). The purpose of such a search is to "produce an

1  inventory" of the items in the car and "to protect an owner's property while it is in the
2  custody of the police, to insure against claims of lost, stolen, or vandalized property,
3  and to guard the police from danger." *Fla. v. Wells*, 495 U.S. 1, 4 (1990) (internal
4  quotations omitted).  "To satisfy the Fourth Amendment, an inventory search must
5  serve administrative, not solely investigatory, goals." *United States v. Anderson*, 101 F.
6  4th 586, 600 (9th Cir. 2024).  "Importantly, 'the mere presence of a criminal
7  investigatory motive or a dual motive—one valid, and one impermissible—does not
8  render an administrative stop or search invalid; instead, . . . [the Court] ask[s] whether
9  the challenged search or seizure would . . . have occurred in the absence of an
10 impermissible reason.'" *United States v. Magdirila*, 962 F.3d 1152, 1157 (9th Cir.
11 2020), quoting *United States v. Johnson*, 889 F.3d 1120, 1126 (9th Cir. 2018).
12       Here, Jim does not have a viable claim that the inventory search was purely
13 driven by investigatory goals.  There was a valid administrative reason for inventorying
14 the car, namely that Jim was deemed intoxicated and unable to drive it.  Jim argues
15 that the officers only elected to do an inventory search and impound the car after they
16 were informed that he was on a "watch list" and was a known gang member.  (Mot. at
17 6-8.) But the inventory search of Jim's vehicle was necessary.  Jim was not able to
18 drive the vehicle anywhere, meaning the officers would needed to have called a tow
19 truck to collect it at some point.  And as a part of that process, the officers would have
20 needed to conduct an inventory search as required by CHP policy.  (*See* ECF 39-5
21 ("An inventory shall be conducted after the vehicle is in lawful custody.").)  Jim cannot
22 void the contents of that search merely because the officers found out his status on a
23 watch list or as a known gang member, especially considering that there already
24 existed valid and necessary reason for those officers to conduct a vehicle inventory
25 search.  *See Magdirila*, 962 F.3d at 1157.  None of Jim's arguments negate the fact
26 that Jim had already been arrested for a DUI, and there were legitimate reasons for
27 the officers to inventory the vehicle.
28

        Separately, Jim argues that his sister was able to come pick up the car, bypassing the need for it to be impounded and inventoried.  "[F]ederal law requires that, when a police officer decides to impound a vehicle and conduct an inventory search, the officer must comply with state law governing impoundments." *United States v. Gates*, 755 F. App'x 649, 651 (9th Cir. 2018), citing *United States v. Wanless*, 882 F.2d 1459, 1464 (9th Cir. 1989).  But in California, CHP officers have no duty to wait for a sober family member to arrive at the scene and transport the car away as an alternative to towing the car and conducting an inventory search.  Cal. Veh. Code § 22651(h)(1) (an officer may tow a vehicle if the driver is arrested and taken into custody); *see United States v. Gonzalez*, No. 2:20-CR-13 WBS, 2021 WL 465357, at *3 (E.D. Cal. Feb. 9, 2021) ("[T]here appears to be no requirement under California law that law enforcement pursue alternatives to impoundment before impounding a car[].");  *see also Colo. v. Bertine*, 479 U.S. 367, 374 (1987) ("We conclude that . . . reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.").  The CHP officers acted in accordance with their policies permitting inventory searches when an officer comes into lawful custody of a vehicle and had no obligation to wait for a family member to arrive to take possession of the car.  (*See* ECF 39-5.)

        Jim also argues that the CHP officers' search was deficient, as it classified only some of the items obtained in the inventory search and property receipts were only issued for the gun and marijuana found in Jim's car.  But an officer need not perfectly comply with an inventory policy for an inventory search to be valid; they need only substantially comply.  *Magdirila,* 962 F.3d at 1157–58; *Anderson*, 101 F. 4th at 596.  While it is true that the CHP policy requires an inventory to include all items accessible in the vehicle, the officers substantially complied with that policy by listing contents including "misc clothes," "shoes," "snacks," "trash," and "backpack," in addition to

indicating that there were "no items of value." (*See* ECF 39-3.)  The officers' classification of these items, and separate classification of evidence obtained in the search, did not substantially run afoul of any inventory policy, and if anything, are indicative of compliance with the CHP policy.

Accordingly, the Court determines that the subsequent discovery of the gun in the vehicle's center console and the marijuana are admissible evidence as products of a valid inventory search.  Because the Court finds that the officers conducted a valid inventory search, it need not assess whether the vehicle exception also applies.

## CONCLUSION

The officers' search of Jim's vehicle and their subsequent discovery of a pistol and marijuana in the vehicle are permissible and the Court finds no basis on which to suppress the evidence.  Jim's Motion to Suppress (ECF No. 39) is DENIED.

IT IS SO ORDERED.

Dated:   **June 22, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC5 – jim224cr00294.mtsuppress